**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

| | | |
|---|---|---|
| MARCHA SMITH, | ) | |
| | ) | |
| ADC # 139016 | ) | **Case No. 5:11-CV-00091 KGB-JTK** |
|     Petitioner, | ) | |
| v. | ) | |
| | ) | |
| RAY HOBBS, Director, Arkansas | ) | |
| Department of Correction | ) | |
|     Respondent. | | |

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**Instructions**

The following recommended disposition has been sent to United States District Court Judge Kristine G. Baker.   Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1

1.     Why the record made before the Magistrate Judge is inadequate.

2.     Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.     The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## Disposition

BEFORE THE COURT is the Petition for Writ of Habeas Corpus (Doc. No. 2) filed by Petitioner Marcha Smith on April 19, 2011.  A response (Doc. No. 9) was filed by Respondent Ray Hobbs on June 9, 2011.  Petitioner's reply (Doc. No. 19) was filed on January 11, 2012. After reviewing the parties' briefing and the available evidence, the Court finds that the current action should be DISMISSED.

## Procedural History

Petitioner was convicted of capital murder for the death of a two-year-old girl, and he was sentenced to life without parole by the Jefferson County (Arkansas) Circuit Court on June 24, 2008. Pet. 1, Doc. No. 2.  He subsequently filed a direct appeal with the Arkansas Supreme Court, arguing that 1) there was insufficient evidence to support the verdict, 2) the trial court erred by allowing admission of his prior felony conviction, 3) the trial court should have granted

a mistrial when the prosecutor's opening statement referred to a witness's testimony regarding a

statement they heard Petitioner make, 4) the trial court erred by allowing admission of evidence

regarding injuries to the victim's vagina and surrounding tissues because there were no sexual

assault charges brought, and 5) the trial court erred by allowing the State to reopen the case, put

on evidence of his age, and amend the criminal information to correctly assert the elements of

the capital-murder charge. *Smith v. State*, 2009 Ark. 453, 343 S.W.3d 319.  Petitioner's appeal

was denied on October 1, 2009.

On November 20, 2009, Petitioner filed a petition for post-conviction relief pursuant to

Ark. R. Crim. P. 37.1.  His Rule 37 petition argued that he had received ineffective assistance of

counsel. *See* Resp't's Resp. Ex. C, Doc. No. 9.  His petition was denied on April 9, 2010, and no

appeal was sought.

### Background

On April 7, 2007, Petitioner called his girlfriend Jasmine Martin several times and asked

her if he could care for her two-year-old daughter LB that evening.  Martin agreed, and

Petitioner picked LB up around seven p.m.  Martin went to a baby shower, and Petitioner

promised that LB would be returned after a few hours.  The baby shower ended around ten p.m.,

and Petitioner told Martin that he would return LB shortly.   LB was never returned, and this

caused Martin to call Petitioner repeatedly throughout the night to ask for LB's return.  On the

next day, Petitioner's cousin said that she would bring LB home on her way to church, but she

called back shortly after to tell Martin that LB was being taken to the hospital because she had

stopped breathing.

Prior to being transferred to Arkansas Children's Hospital in Little Rock, LB was cared

for by Jefferson County Regional Medical Center (JCRMC) emergency room physician Dr. John

Skowronski. LB arrived at JCRMC at nine thirty-three a.m., and she was in full cardiorespiratory arrest; her pupils were dilated and fixed; and she was limp and unconscious. Dr. Skowronski observed that LB had multiple bruises on her legs, some of which were so large that they extended up onto her abdominal wall. She also had blood under the skin around her eyes. Upon further examination, and prior to inserting a catheter, Dr. Skowronski noted a tear in LB's vagina. LB was transferred to Children's Hospital later that day, but passed away the next day.

David DeFoor was an off-duty detective working at JCRMC when LB was brought to the emergency room. When DeFoor asked Petitioner what happened, Petitioner replied that he had "popped her a couple of times on the backside" when LB urinated on herself while he was preparing to give her a bath before church. This allegedly caused LB to take off running, and she then slipped, fell, and hit the back of her head. Petitioner further told DeFoor that when he put LB in the tub for her bath, she passed out, and he brought her to the hospital because she was not breathing.

The autopsy revealed quite a few injuries, including a fracture to the back of her head that was described as "severe." Medical Examiner Dr. Adam Craig testified that LB's death was caused by multiple blunt force injuries. He opined that the injuries to her head would have caused LB immediate unconsciousness, although she might have then regained consciousness for a time. Ultimately, her injuries would have caused swelling within her skull that would have in turn caused cardiorespiratory arrest. He compared the force causing the injury to her falling two or three stories and opined that it was not an injury the child could have caused herself by slipping and falling.

Martin testified that she had bathed LB the day before she let Petitioner take her and that LB had no bruises, bumps, injuries, vaginal discharge, or bleeding of any form anywhere when

she gave LB to Petitioner.  Martin's mother, Cynthia Johnson, testified that Martin and LB lived with her, that she had seen LB before the baby shower, and that LB had no injuries or bleeding. Johnson also testified LB had suffered a cigarette burn behind one ear when LB had stayed with Petitioner on a prior occasion.  Petitioner's brother Brian Stovall testified that he and Petitioner were alone with LB at Petitioner's house.  According to Stovall, he saw LB when she arrived and throughout the evening.  However, after she was put to bed, aside from peeking in on her about ten p.m., he did not see her until he was awakened the next morning by Petitioner in a panic that she was ill.  According to Stovall, LB was fine when put to bed.  He testified that he heard nothing during the night.

Petitioner testified that to his knowledge, LB was okay when he picked her up from Martin.  According to Petitioner, he put her to bed and awoke when she needed to use the bathroom around five a.m.  Petitioner reported that he took her to the bathroom, but she dawdled, and he returned to sit on the bed, where he fell asleep.  He next was aware of her at seven-thirty a.m. when he awoke and found her asleep on the couch with the front door cracked open. Petitioner stated in his testimony that he checked on her at that time, and she was sleepy, so he put her back to bed where she remained for about ten minutes.  According to Petitioner, after ten minutes, she got up and came into the kitchen.  He testified that she urinated on the floor, and he "spanked her on the butt twice" while telling her to go to the bathroom.  Petitioner stated that in response, she started running, ran around the table, and slipped and hit the back of her head. According to Petitioner, she did not cry after hitting her head, and he put her in the tub while he brushed his hair.  LB then allegedly "leaned back against the back of the tub and took a deep breath and her head dropped."  He reported that she was not responsive, so he removed her from the tub, took her to the living room and could not find a pulse. He stated that he then woke

up his brother, and they got neighbor Sylvia Jones who helped him transport LB to the hospital.

## Discussion

Petitioner requests relief pursuant to 28 U.S.C. § 2254, arguing that 1) there was insufficient evidence to support the verdict, 2) his prior felony conviction should not have been admitted, 3) the prosecutor's opening statement's reference to a witness's testimony regarding a statement they heard Petitioner make should have been declared a mistrial, 4) evidence regarding injuries to the victim's vagina and surrounding tissues should not have been admitted, and 5) the State should not have been allowed to reopen the case, put on evidence of his age, and amend the criminal information.   Respondent contends that the action should be dismissed because Petitioner's claims are time barred, fail to raise issues of federal law, and are meritless.

## I.    Limitations Period

Section 2244 requires state habeas petitioners to file their petitions within one year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).  Petitioner's direct appeal was denied by the Arkansas Supreme Court on October 1, 2009, so the limitations period would normally have begun to run ninety days later on December 30, 2009.[1]   However, Petitioner's November 20, 2009 Rule 37 petition tolled the limitations period because § 2244 excludes the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).  The parties agree that the limitations period was tolled at least until the denial of his Rule 37 petition on April 9, 2010.

---

[1] Supreme Court Rule 13.1 (explaining that a petition for a writ of certiorari "is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment").

Respondent argues that Petitioner's action is untimely because he did not file an appeal

of the lower court's denial and because his federal habeas petition was not filed until April 19,

2011, ten days after the one-year period had passed.   Petitioner contends that the limitations

period did not begin on April 9, 2010, because it was tolled for the thirty days that he was

entitled to appeal the lower court's denial. Ark. R. App. P.—Crim. 2(a)(4).

Petitioner primarily relies on the Eighth Circuit's decision in *Williams v. Bruton*,

299 F.3d 981 (8th Cir. 2002), which reiterated a previous holding that a state post-conviction

application is considered "pending" during the time that the petitioner could seek an appeal,

regardless of whether an appeal is actually sought.   Although *Williams* would appear to indicate

that Petitioner's action is timely, Respondent argues that *Williams* directly contradicts the

Supreme Court's decisions in *Evans v. Chavis*, 546 U.S. 189 (2006), and *Carey v. Saffold*,

536 U.S. 214 (2002).   Indeed, the Court is unclear how *Williams* could possibly be reconciled

with *Evans* and *Saffold*.

Both *Evans* and *Saffold* decided whether state post-conviction proceedings were

considered pending under § 2244(d)(2).   Among other things, *Saffold* held an application for

state collateral review is pending during the interval between a lower court's entry of judgment

and the timely filing of a notice of appeal (or petition for review) in the next court. *Saffold*,

536 U.S. at 219-26.   Several years later, *Evans* repeatedly clarified that a timely appeal must be

filed in order to toll limitations for the period during which a petitioner could appeal a post-

conviction decision. *See Evans*, 546 U.S. at 191 ("The time that an application for state

postconviction review is 'pending' includes the period between (1) a lower court's adverse

determination, and (2) the prisoner's filing of a notice of appeal, *provided that* the filing of the

notice of appeal is timely under state law.") (citing *Saffold*, 536 U.S. 214); *Id.* at 192 ("*If the*

7

*filing of the appeal is timely*, the period between the adverse lower court decision and the filing

(typically just a few days) is not counted against the 1–year AEDPA time limit.") (emphasis

added); *Id.* at 197 ("In *Saffold*, we held that (1) only a *timely* appeal tolls AEDPA's 1–year

limitations period for the time between the lower court's adverse decision and the filing of a

notice of appeal in the higher court . . . ."). Given the fact that the Supreme Court specifically

limited its discussion to *timely* appeals, "the period between the adverse lower court decision and

the filing" of an appeal necessarily exists within the time allowed for appeals by state law. *Id.* at

197. However, *Williams* held that the limitations period is tolled for the full amount of time that

is permitted for an appeal, regardless of whether an appeal is ever filed. Thus, it is unclear how

*Williams*'s interpretation of "pending" can stand after the decisions in *Evans* and *Saffold*.[2]

The Court's resolution of the limitations issue would be quite simple if the analysis

ended there, but the Eighth Circuit's decision in *Streu v. Dormire*, 557 F.3d 960, 966 (8th Cir.

2009), complicates matters significantly. This is because *Streu* was decided three years after

*Evans*, and it reiterated *Williams*'s holding regarding when a post-conviction application is

considered pending. However, it is not apparent that *Streu* considered *Evans*'s clarifications of

*Saffold* because *Evans* was never mentioned. Further, *Streu*'s discussion of *Saffold* seems at

odds with the Eighth Circuit's previous synopsis in *Walker v. Norris*, 436 F.3d 1026, 1030 (8th

Cir. 2006).

> [*Saffold*] determined a petition is pending during "the time between a lower state
> court's decision and the filing of a notice of appeal to a higher state court." The
> Court intimated, if the state court ultimately determines the petition did not

---

[2]

 It should also be noted that § 2244 explicitly refers to the "conclusion of direct review *or the
expiration of the time for seeking such review*," yet merely refers to the time that a "properly filed
application for State post-conviction or other collateral review . . . *is pending.*" 28 U.S.C. § 2244(d)
(emphasis added). Further, "the timely filing of a notice of appeal is, and always has been,
jurisdictional" under Arkansas law, so no appeal had begun until such a notice was filed. Thus, no
appeal was pending. *Wright v. State*, 359 Ark. 418, 423, 198 S.W.3d 537, 541 (2004).

comply with the state's timeliness requirements, *the petition would not have been pending during that period* within the meaning of section 2244(d)(2)'s tolling provision.

*Id.* (emphasis added) (internal citations omitted).    Despite the apparent untimeliness of Petitioner's petition under *Evans* and *Saffold*, the Court will address the merits of Petitioner's claims due to the uncertainty cast by *Streu*.

## II.   Procedural Default

A habeas petitioner who cannot present his federal claims in state court due to untimeliness or some other state procedural hurdle meets the technical requirements for exhaustion because there are no longer any state remedies that are available to him. *Grass v. Reitz*, 643 F.3d 579, 584 (8th Cir. 2011) (citing *Coleman v. Thompson*, 501 U.S. 722, 732 (1991)).  "However, that petitioner's procedural default may constitute an 'independent and adequate state ground' barring federal habeas relief absent a showing of either cause and prejudice or actual innocence." *Id.* (internal citations omitted).  "[W]e ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies, *i.e.*, whether he has fairly presented his claims to the state courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  To meet this fair presentation requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* at 845.  "A failure to exhaust remedies properly in accordance with state procedure results in procedural default of the prisoner's claims." *Welch v. Lund*, 616 F.3d 756, 758 (8th Cir. 2010) (citing *O'Sullivan*, 526 U.S. at 848).

Respondent contends that Petitioner's claims are procedurally defaulted because he failed to reference federal law during his appeal to the Arkansas Supreme Court. "[W]e traditionally

demand that a habeas petitioner have presented 'the same legal theories and factual bases to the state courts.'" *Wyldes v. Hundley*, 69 F.3d 247, 251 (8th Cir. 1995) (quoting *Pollard v. Armontrout*, 16 F.3d 295, 297 (8th Cir. 1994)).  "At minimum, though, the petitioner during direct appeal must have explicitly referred the state courts to the United States Constitution or federal case law." *Id.* (citing *Luton v. Grandison*, 44 F.3d 626, 628 (8th Cir. 1994)); *see also Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam) (holding that state courts "must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution"); *Carney v. Fabian*, 487 F.3d 1094, 1096-97 (8th Cir. 2007) (holding that prisoner did not satisfy presentment requirement because he "did not specifically assert a due process violation, refer to the United States Constitution, or cite a relevant federal constitutional case"); *McDougald v. Lockhart*, 942 F.2d 508, 510 (8th Cir. 1991) ("Explicit citation to the Constitution or to a federal case is necessary for fair presentation of a constitutional claim in state court.").

Although Petitioner's appellate brief failed to contain any references to federal law, not all of his arguments are procedurally barred.  This is because Petitioner's first argument attacked the sufficiency of the evidence at trial, and the Eighth Circuit has held that "[a]ny challenge to the sufficiency of the evidence to convict in a state prosecution is necessarily a due process challenge to the conviction." *Satter v. Leapley*, 977 F.2d 1259, 1262 (8th Cir. 1992) (citing *Jackson v. Virginia*, 443 U.S. 307, 322 (1979)).  Accordingly, the Court finds that Petitioner's first argument was exhausted and is not procedurally barred.

Because Petitioner's remaining claims were defaulted in state court, federal habeas review of these claims is barred unless he can 1) show cause for the defaults and actual prejudice as a result of the alleged constitutional violations or 2) demonstrate that failure to consider these claims will result in a fundamental miscarriage of justice. *Murphy v. King*, 652 F.3d 845, 850

(8th Cir. 2011). Petitioner does not argue that he can show cause and prejudice, but he does vaguely argue that his claims should be considered because he is actually innocent.

"Due to important comity and finality interests, the actual innocence gateway is very limited. Few petitions are 'within the narrow class of cases . . . implicating a fundamental miscarriage of justice.'" *Weeks v. Bowersox*, 119 F.3d 1342, 1351 (8th Cir. 1997) (quoting *Schlup v. Delo,* 513 U.S. 298, 315 (1995)). Petitioners raising claims of actual innocence must satisfy a two-part test. "First, the petitioner's allegations of constitutional error must be supported with new reliable evidence that was not presented at trial. Second, the petitioner must establish that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* (quoting *Bowman v. Gammon*, 85 F.3d 1339, 1346 (8th Cir. 1996)). Petitioner has not provided any new evidence. Thus, he has failed to successfully invoke the fundamental miscarriage of justice exception, and his second through fifth claims are procedurally barred from federal consideration.

## III. Petitioner's Claims

Federal courts may only overturn a state adjudication through habeas if it resulted in a decision that was 1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or 2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"A state court decision is 'contrary to' clearly established federal law if it reaches a conclusion opposite that of the Supreme Court on a question of law, or reaches a decision contrary to the Supreme Court on materially indistinguishable facts." *Arnold v. Dormire*, 675 F.3d 1082, 1085 (8th Cir. 2012) (citing *Wiliams v. Taylor,* 529 U.S. 362, 405 (2000)). "A

state court decision involves an 'unreasonable application' when it identifies the correct legal rule, but unreasonably applies it to the facts. 'A state court's application of clearly established federal law must be objectively *unreasonable*, not merely incorrect, to warrant the granting of a writ of habeas corpus.'" *Id.* (citing *Jackson v. Norris*, 651 F.3d 923, 925 (8th Cir. 2011)).  A state court's "determination of a factual issue . . . shall be presumed to be correct," and petitioners bear "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254 (e)(1).

### A.  Sufficiency of the Evidence

Petitioner's first argument attacks the sufficiency of the evidence at trial, but the scope of review for such claims "is extremely limited." *Whitehead v. Dormire*, 340 F.3d 532, 536 (8th Cir. 2003).  This is because the Court is limited to determining "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at 319.

As noted by the Arkansas Supreme Court, the testimony of Petitioner, Stovall, Martin, and Johnson indicated that LB was fine when Petitioner picked her up that evening.  Further, both Petitioner and Stovall testified that LB was fine that evening up to and including the time she was put to bed.  Petitioner also testified that LB was fine when she awoke.  Thus, the injuries had to have been sustained after LB awoke and while she was in Petitioner's sole custody and control.  His explanation for the injuries was that LB slipped, fell, and struck her head on the floor, but medical testimony declared this explanation implausible.  Petitioner could not explain the origin of her many other injuries, and he was the only person who had contact with and the opportunity to injure LB at the time the injuries were sustained.

Petitioner has failed to rebut the correctness of the jury's findings of facts by clear and convincing evidence.  He does not offer any new evidence, and his primary argument is that *Jackson* has not been satisfied because no reasonable juror could have found the elements[3] satisfied beyond a reasonable doubt.  In particular, Petitioner contends that there is nothing to show that he did anything knowingly and that Stovall's presence in the house means that LB's death could have been caused by another person.  The Court finds no merit to these arguments given the medical evidence that was presented.  Further, a reasonable juror could have inferred the *mens rea* from the amount of force that was used to injure LB's head, and Stovall's presence during the night appears to be irrelevant given Petitioner's testimony regarding what happened in the morning.

### B.  Admission of Prior Felony

Petitioner contends that the trial court erred by allowing the prosecution to present evidence of his prior felony conviction for aggravated assault.   This argument relies entirely on the trial court's application of Arkansas Rule of Evidence 609 and interpretation of Arkansas case law, but this Court's review is limited to determining whether Petitioner's federal rights have been violated. *See* 28 U.S.C. § 2241(c)(3) (requiring Petitioner to show he "is in custody in violation of the *Constitution or laws or treaties of the United States*") (emphasis added); *Carter v. Bowersox*, 265 F.3d 705, 714 (8th Cir. 2001) ("As a general rule, a violation of state law, without more, is not the equivalent of a violation of the Fourteenth Amendment.").

Petitioner's argument would still fail if the Court were to address it as being under Federal Rule of Evidence 609. *Troupe v. Groose*, 72 F.3d 75, 76 (8th Cir. 1995) (finding that

---

[3] The jury convicted Petitioner of being a person eighteen years or older who knowingly caused the death of a person fourteen years of age or younger under circumstances manifesting extreme indifference to the value of human life. Ark. Code Ann. § 5-10-101(a)(9)(A).

state court's admission of prior felony conviction was not a constitutional violation).  It is not enough to argue that the trial court's decision that the probative value of this evidence outweighed its prejudicial effect was merely incorrect; that decision must have been "objectively *unreasonable*." *Arnold*, 675 F.3d at 1085.

### C.  Prosecutor's Opening Statement

Petitioner next argues that the trial court erred by refusing to declare a mistrial when the prosecutor's opening statement referred to a witness's testimony that "[Petitioner's] trying to get LB to wake up, and that he says he can't go back to jail."  The trial court ruled that this was a statement of a party-opponent that revealed a guilty conscience.

Although the prosecutor's statement clearly referred to Petitioner's prior conviction well before Petitioner ever took the stand,  the Court is unaware of how the judge's decision not to grant a mistrial was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). Further, this argument relies entirely on state law.  Errors of state law that rise to the level of a constitutional violation may be corrected by a habeas court, but even an error of constitutional dimensions will merit habeas corpus relief only if it had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).  Petitioner has failed to demonstrate that the prosecutor's statement had such an effect, and his prior conviction was eventually admitted through other means.

### D.  Evidence Regarding Injuries

Petitioner argues that the trial court should not have admitted evidence of injuries to LB's vaginal area because there were no charges of sexual assault, these injuries did not contribute to

14

her death, and at least one doctor stated that the mild contusions could have been caused by medical personnel performing an exam or rape kit.  This argument is based on state law, and it is unclear that the trial court's decision to allow evidence pertaining to all of the victim's injuries raises issues that are cognizable upon federal habeas review.  "We grant habeas relief based on a state court evidentiary ruling only if the alleged error was so conspicuously bad that it fatally infected the trial and rendered it fundamentally unfair." *Troupe*, 72 F.3d at 76.

### E.  Reopening of Case

Petitioner's final argument is that it was error to allow the State to reopen the case, put on evidence of his age, and amend the criminal information.  This argument is based on state law, and Petitioner does not even allege that any significant prejudice resulted from the amendment to the criminal information, which merely added that Petitioner was eighteen years or older.

Given the various bars to federal consideration and the lack of merit to Petitioner's claims, there is no basis for disturbing Petitioner's conviction under 28 U.S.C. 2254.

### Conclusion

IT IS THEREFORE ORDERED that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 2) be, and it is hereby, dismissed, with prejudice.  The relief prayed for is DENIED.

SO ORDERED this 24th day of May, 2012.

_____
United States Magistrate Judge